UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG M. SANBORN, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 24-12713-FDS |
| ) | |
| WARDEN BOWERS, FMC Devens, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER ON
RESPONDENT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C § 2241 filed by a prisoner in federal custody at Federal Medical Center—Devens ("FMC Devens") in Ayer, Massachusetts. Petitioner Craig Sanborn challenges the Bureau of Prisons' ("BOP") calculation of his time served and earned-time credits under the First Step Act, 18 U.S.C. § 3632 ("FSA"). Specifically, he contends that the BOP did not credit him with federal time served between November 23, 2023, and December 20, 2023. He also alleges that the BOP miscalculated his FSA earned-time credits by failing to consider the time that he was held in federal custody pending his transfer to his designated BOP facility.

Respondent, Warden Bowers of FMC Devens, has moved to dismiss the petition for failure to state a claim upon which relief can be granted. For the following reasons, the motion will be granted.

I.  **Background**

Unless otherwise noted, the following facts are set forth as alleged in the petition.[1]

A.  **Factual Background**

In January 2015, the U.S. District Court for the District of Maine sentenced Craig Sanborn to a term of 28 months of incarceration with a three-year term of supervised release for wire fraud. (Pet. Ex. 1 at 1). That sentence was ordered to be served consecutively with a New Hampshire state-prison sentence that Sanborn was already serving at the time. (*Id*. at 2).

Sanborn was granted parole on December 20, 2023, and immediately remanded to federal custody. (Bourke Decl. ¶ 6; Bourke Decl. Ex. B).[2] The U.S. Marshals Service then transported Sanborn to Strafford County Correctional Center in Dover, New Hampshire, where he was held pending his transfer to his designated BOP facility at FMC Devens. (Pet. at 7). While at Strafford, Sanborn was allegedly prohibited from participating in any work programs because of a previous spinal surgery that he underwent in May 2023. (*Id*.). However, the petition alleges that Sanborn participated in a yoga rehabilitation class during his time at Strafford. (*Id*.). On February 1, 2024, Sanborn was transferred to FMC Devens. (*Id.*).

The petition alleges that the BOP did not begin calculating Sanborn's FSA credits until he arrived at FMC Devens in February 2024, rather than commencing the calculation on the first

---

[1] On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] The petition alleges that Sanborn was granted parole on November 23, 2023. (Pet. at 7). However, that allegation appears to be based on the "minimum parole date" that was set at his October 5, 2023 parole hearing. (*Id.* at 3; Pet. Ex. 1 at 7). As an attachment to the declaration of Amber Bourke, a BOP case-management coordinator, respondent has submitted Sanborn's official certificate of parole issued by the New Hampshire Adult Parole Board. (Bourke Decl. Ex. B). The certificate is dated December 19, 2023, and establishes Sanborn's effective date of parole as the following day, December 20, 2023. (*Id.*). Courts may permissibly consider official public records like Sanborn's certificate of parole without converting a motion to dismiss into a motion for summary judgment. *See Watterson*, 987 F.2d at 3; *Nygren v. Boncher*, 578 F. Supp. 3d 146, 149 n.1 (D. Mass. 2021). Thus, the effective parole date is understood to be December 20, 2023.

day of his federal custody at the Strafford County Correctional Center.  (*Id*. at 2, 7).  The petition alleges that Sanborn should receive FSA credits of 15 days per month of incarceration, starting on the date on which he was remanded to federal custody at the Strafford facility.  (*Id*. at 2, 7).  The petition also alleges that Sanborn should have received credit for time served between November 23, 2023, and December 20, 2023.  (*Id.* at 2).[3]

### B.     Procedural Background

#### 1.     BOP Administrative Remedies

Before filing his petition in this court, Sanborn pursued three administrative remedies with the BOP concerning the calculation of his FSA time credits.  (*Id*. at 2, 3).  First, on August 21, 2024, he informally raised the issue to his case manager and unit-team manager at FMC Devens.  (*Id.* at 2).  That request was denied on August 26, 2024.  (*Id.*).  Sanborn then appealed that decision to Warden Bowers on August 29, 2024.  (*Id.* at 3).  The appeal was denied on September 18, 2024.  (*Id.*).  Finally, on September 24, 2024, Sanborn filed an appeal to the BOP's Northeast Regional Office.  (*Id.*).  In that appeal, Sanborn contested the calculation of his FSA time credits; he also, for the first time, asserted that his time-served calculation should have begun on November 23, 2023, as opposed to December 20, 2023.  (Magnusson Decl. ¶ 12).[4] Because Sanborn had not raised the time-served issue in his previous appeals, the Regional Office denied the appeal on October 8, 2024.  (Pet. at 3; Magnusson Decl. ¶ 12).  In that denial,

---

[3] As noted, Sanborn's federal custody began on December 20, 2023, not November 23, 2023.  (*See* Bourke Decl. Ex. B).

[4] Respondent has submitted the declaration of Cheryl Magnusson, a legal assistant at FMC Devens, to explain the BOP's administrative-remedy process as well as Sanborn's exhaustion of those remedies.  Because the facts concerning Sanborn's adherence to the BOP's administrative-remedy process are not disputed and are based on official records produced by the BOP, the Court will accept the declaration and the attached exhibit without converting the motion to dismiss to a motion for summary judgment. *See Dunlap v. Warden FMC Devens*, 2024 WL 5285006, at *5 (D. Mass. Dec. 13, 2024), *report and recommendation adopted*, 2025 WL 35248 (D. Mass. Jan. 6, 2025) ("In deciding motions to dismiss habeas petitions that challenge the computation of a prisoner's release date, this Court has applied the exception to consider declarations from BOP officials.").

the Regional Office explained the basis of the denial and instructed Sanborn to re-submit his regional appeal in proper form within ten days of receiving the rejection notice. (Magnusson Decl. ¶ 12).

Sanborn did not re-submit his regional appeal. (*Id.* ¶ 13). Nor did he complete the final step of the BOP's administrative-remedy process by filing a subsequent appeal with the BOP's Office of General Counsel. (*Id.* ¶¶ 7, 13). Instead, the petition alleges that Sanborn stopped pursuing his administrative remedies because doing so would have been futile and prejudicial. (Pet. at 3).

### 2. Habeas Petition

On October 25, 2024, Sanborn filed a *pro se* petition in this court under 28 U.S.C. § 2241 challenging the BOP's calculation of his time served and his earned time credits under the FSA. (Pet. at 2). Respondent moved to dismiss the petition for a failure to state a claim upon which relief can be granted on November 22, 2024. Sanborn filed an opposition to the motion on December 19, 2024. Respondent filed a reply on January 6, 2025. Without leave of court, Sanborn filed another reply on January 24, 2025.

## II. Standard of Review

### A. *Pro Se* Pleading

Any document filed by a *pro se* party is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required 'to set forth factual allegations,

4

either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 1997 WL 351633, at *1 (1st Cir. 1997) (per curiam)). Where the court cannot ascertain the nature and basis of any legitimate claims, it is under no obligation to rewrite the pleadings on the plaintiff's behalf. *D.S. v. Kijakazi*, 2024 WL 22858, at *1 (D. Mass. Jan. 2, 2024) (citing *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 276-77 (11th Cir. 2008)).

    **B.**    **Rule 12(b)(6)**

A court examines "a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)." *Walsh v. Boncher*, 652 F. Supp. 3d 161, 164 (D. Mass. 2023) (citations omitted). To survive a motion to dismiss, the petition must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the [petition] are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a petition satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the petition fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513

F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.    Analysis

As a threshold matter, the petition alleges that petitioner did not fully exhaust his administrative remedies prior to filing suit in this court because doing so would have been futile and prejudicial to petitioner. (Pet. at 3). Respondent contends that petitioner's failure to exhaust his administrative remedies precludes him from filing a habeas petition in federal court at this time.[5]

The BOP's Administrative Remedy Program, codified in 28 C.F.R. §§ 542.10-19, sets forth a multi-level system for federal inmates to seek review on issues related to their confinement. *See* 28 C.F.R. §§ 542.10-19. An inmate must first informally raise the issue with correctional-facility staff. *See id.* § 542.13. If the issue is not informally resolved, the inmate may initiate the formal administrative-remedy process by submitting a Request for Administrative Remedy to the facility warden. *See id.* § 542.14. That first formal step is known as BP-9. *Id.*

If the request to the warden is unsuccessful, the prisoner may move on to the BP-10 step by submitting an appeal to the Regional Director. *See id.* § 542.15. Upon receiving a rejection from the Regional Director, the inmate may proceed to the final BP-11 step by filing an appeal

---

[5] Respondent failed to address the administrative-exhaustion issue in his opening motion to dismiss. However, he did address the matter in his reply brief. (Resp't Rep. at 1). Although new arguments may not generally be raised in a reply brief, *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010), courts may nevertheless grant a motion to dismiss on grounds "not fully briefed," *see Phillips v. Bowers*, 2025 WL 1531324, at *2 (D. Mass. May 28, 2025) (dismissing a § 2241 petition on the ground that the petitioner failed to exhaust administrative remedies, even though the motion to dismiss failed to address the issue). Like the petitioner in *Phillips*, petitioner here raised the administrative-exhaustion issue in his petition and was therefore on notice of the potential defect in his suit. *See Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 243 n.2 (1st Cir. 2006). The Court may therefore consider whether petitioner's failure to exhaust administrative remedies was permissible or warrants dismissal of the petition.

with the BOP's Office of General Counsel. *Id.* Under the governing regulations, a prisoner is deemed to have fully exhausted his administrative remedies only after receiving a BP-11 ruling from the Office of General Counsel. *See id.* § 542.15(a).[6]

Ordinarily, a petitioner must exhaust his administrative remedies before filing a § 2241 petition in federal court. *See Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999); *see also Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021) ("Generally speaking, a plaintiff's failure to exhaust her administrative remedies precludes her from obtaining federal review of claims."). If a prisoner fails to exhaust all administrative remedies with the BOP, his § 2241 petition is subject to dismissal. *See Rodriguez-Rosa v. Spaulding*, 2020 WL 2543239, at *7 (D. Mass. May 19, 2020). The exhaustion requirement allows the BOP to correct any overlooked errors and develop a factual record before the claim is brought into court. *Id.* In addition, issues that involve factually specific matters, like whether a petitioner participated in any programs that would earn him FSA time credits, are "exactly the type of issue that should be fleshed at the administrative level prior to adjudication by the Court." *Nygren*, 578 F. Supp. 3d at 153 (citations omitted).

Here, the petition alleges that petitioner failed to exhaust his administrative remedies. (Pet. at 3). Specifically, petitioner's BP-10 appeal was denied and he not re-submitted that appeal—as the BOP instructed him to do—or filed a BP-11 appeal with the Office of General Counsel. (*Id.*; Magnusson Decl. ¶¶ 12-13). Moreover, petitioner's underlying claims involve factually specific questions concerning his eligibility for FSA time credits during the period in which he was awaiting transfer to FMC Devens. *See Nygren*, 578 F. Supp. 3d at 153. For

---

[6] The Office of General Counsel has 40 days to respond to a BP-11 appeal, with a 20-day extension if necessary. *See* 28 C.F.R. § 542.18. If a prisoner does not receive a response within the allotted time, then the lack of response is considered a denial of the appeal, and the prisoner is then deemed to have exhausted his administrative remedies. *See id.* § 542.15(a).

7

example, the petition alleges that petitioner is entitled to FSA time credits because he participated in a yoga program while at the Strafford correctional center. (Pet. at 7). The petition further alleges that because of petitioner's spine injury, the yoga program was the only one available to him before his transfer to FMC Devens. (*Id.*). However, the petition does not allege that yoga classes are an approved activity that qualifies for FSA time credits. Nor does it allege that petitioner completed any other approved activity while awaiting transfer to FMC Devens. Factual disputes of that nature are "exactly the type of issue" that should be first adjudicated at the administrative level prior to adjudication by this Court, and support dismissal of the petition at this stage. *See Nygren*, 578 F. Supp. 3d at 153.

### A.     Futility

The petition alleges that a federal suit is nonetheless permissible because, under the circumstances, further pursuit of administrative remedies would have been futile. (Pet. at 3). Courts have recognized an exception to the administrative-exhaustion requirement "where a petitioner can show that fulfilling the requirement would be futile." *Levine v. U.S. Dep't of Fed. Bureau of Prisons*, 2021 WL 681689, at *3 (D. Mass. Feb. 22, 2021). However, a petitioner cannot generally assert a futility argument when he was instructed, but failed, to re-submit an administrative appeal. *See Rodriguez-Rosa*, 2020 WL 2543239, at *10 (dismissing a § 2241 petition filed by a petitioner who ignored a BOP instruction to re-submit an administrative appeal, reasoning that "allowing a futility exception under these circumstances would encourage petitioners to bypass the deadline and defeat the purpose of the exhaustion doctrine"). Here, petitioner failed to re-submit his BP-10 appeal, despite being instructed to do so by the BOP. The BOP also informed petitioner about the specific defect in his initial BP-10 appeal. Yet, to date, petitioner has not re-filed the BP-10 appeal or filed a subsequent BP-11 appeal. Thus, like

in *Rodriguez-Rosa*, permitting a futility exception in this case would incentivize petitioners to circumvent the administrative-remedy process.

And, in any event, aside from the conclusory allegation that further pursuit of administrative remedies "would be futile," the petition does not allege any basis to explain why re-submitting a BP-10 appeal or filing a BP-11 appeal would, in fact, be futile. (Pet. at 3). Thus, the futility exception does not apply here.

### B. Prejudice

The petition also alleges that further pursuit of administrative remedies would have been prejudicial to petitioner. (Pet. at 3). Some courts have excused prisoners from the administrative-exhaustion requirement when a petitioner can show "cause and prejudice." *Nygren*, 578 F. Supp. 3d at 152 (citing *Dunbar v. Sabol*, 649 F. Supp. 2d 1, 4 (D. Mass. 2009)). To show cause, a petitioner must demonstrate "that there were legitimate circumstances beyond the prisoner's control [that] preclude[d] him from fully pursuing his administrative remedies." *Id.* (internal quotations and citations omitted). Once a petitioner shows cause, "he must then demonstrate 'prejudice'" by showing that he "suffered actual prejudice from the alleged violation of rights." *Id.*

Again, however, the petition does not allege any facts to suggest that there were circumstances beyond petitioner's control preventing him from re-submitting the BP-10 appeal or from filing a BP-11 appeal. Indeed, the petition indicates that petitioner, on his own, decided to stop pursuing the BOP's administrative-remedy program. Thus, the prejudice exception does not apply here. Accordingly, the motion to dismiss will be granted.[7]

---

[7] At least one court has rejected respondent's contention that 28 C.F.R. § 523.42(a) precludes prisoners in federal custody from earning FSA time credits before they are transferred to their designated BOP facility. *See, e.g.*, *Borker v. Bowers*, 2024 WL 2186742, at *1 (D. Mass. May 15, 2024), *appeal dismissed*, No. 24-1648, 2024 WL 5319356 (1st Cir. Oct. 25, 2024) (holding that 28 C.F.R. § 523.42(a) contravenes the plain language of the FSA,

9

## IV.     Conclusion

For the foregoing reasons, respondent's motion to dismiss is GRANTED.

**So Ordered.**

                                                                               /s/ F. Dennis Saylor IV
                                                                               F. Dennis Saylor IV
Dated:  June 20, 2025                                  Chief Judge, United States District Court

---

which states that a prisoner "shall" earn time credits once his "sentence commences," rather than when he arrives at his designated correctional facility).  Nonetheless, because petitioner has neither exhausted his administrative remedies nor provided any basis to suggest that doing so would be futile or prejudicial, the motion to dismiss will be granted.